CITIZENS' NATIONAL BANK OF GREEN BAY, Respondent, vs. HARTER and another, imp., Appellants.

*January 9—January 28, 1908.*

*Bills and notes: Payment by postdated check: Liability of maker after dishonor of check: Questions for jury.*

In an action on a promissory note it appeared, among other things, that the note had been transferred by the payee to the plaintiff bank, that the makers had given the payee some cash and the postdated check of a third person, drawn on another bank, which the payee left with the plaintiff bank in payment, and that thereupon the plaintiff bank stamped the check "paid" and surrendered it to the payee. The check not being paid at maturity, the plaintiff bank directed the other bank not to protest its nonpayment, and for several months allowed it to hold the check and press its maker to deposit funds to meet it. *Held,* that the evidence, stated in the opinion, presented a basis for an inference that the cash and check were in fact received by the plaintiff bank as payment of the note and called for the submission to the jury of that question, and hence it was error to direct a verdict in favor of the plaintiff bank.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

On December 14, 1905, the following note was executed:

"$450.00.                                                    90579.

"Green Bay, Wis., Dec. 14, 1905.

"Twelve days after date, for value received, we promise to pay to E. McIntyre & Co. or bearer, at the *Citizens' National Bank of Green Bay,* four hundred and fifty dollars, with interest at the rate of six per cent. per annum until paid.                                    JACOB HARTER.

"MIKE BRAUN.

"Due Dec. 26, 1905.                                    Waubeno."

The note was given in payment for machinery purchased by *Harter* and was indorsed and transferred to the *Citizens' National Bank of Green Bay.* On or about December 24, 1905, the cashier of the bank wrote to *Harter* and *Braun* stating that the bank held the note and that the bank guaranteed that there were no liens or claims of any kind against

the goods being bought from E. McIntyre & Co., and asking them to send the money to pay the note just as soon as the goods were delivered. On January 10, 1906, in accordance with an understanding between *Harter, Braun,* and Mc-Intyre, McIntyre received $75 in cash and the following check with which to settle the note:

"The Citizens' National Bank of Oconto, Wis.    No. 1078.
                                      "Jan. 22, 1906.
    "Pay to the order of E. M. McIntyre & Co.......$375.₁⁰₀%
Three hundred seventy-five dollars.
                                      "A. L. BURGAN & Co."

This check was given for a debt of A. L. Burgan & Co. to *Braun,* and was postdated to the knowledge of and with the consent of McIntyre. The check was indorsed by McIntyre, and on January 13, 1906, with the $75 in cash, was given to the cashier of the Green Bay bank. The cashier received the money and the check, stamped the note as paid, and delivered it to McIntyre. The check was indorsed for collection by the Green Bay bank and was sent to the bank at Oconto so as to reach there about the time it bore date. On January 22, 1906, the Oconto bank's cashier wrote to the bank at Green Bay stating that there were no funds of Burgan & Co. at the bank and he was unable to credit the Green Bay bank with the amount of the check, and that Burgan & Co. had been notified that security would be required before it was paid. The letter also stated that the bank expected to receive the security and would notify the Green Bay bank as soon as the matter had been adjusted. The cashier also called up the Green Bay bank by telephone, informed the bank that there were no funds in the bank to meet the check, and was instructed not to protest the check for nonpayment. On January 31, 1906, the cashier of the Oconto bank again wrote to the Green Bay bank that Burgan & Co. had not as yet made a deposit to meet the check and that their account was $600 overdrawn, and stated: "I still have every assur-

ance that this matter will be adjusted speedily." On February 12, 1906, the cashier of the Oconto bank again wrote to the Green Bay bank and stated that Burgan & Co. were not yet in a condition to meet their obligations, but that they had promised to meet them by February 20, 1906. There was evidence in the case that *Harter* knew some time in February that the check had not been paid. On March 5, 1906, the cashier of the Green Bay bank wrote to *Harter* and *Braun* asking them to arrange for the payment of the note, and stating that the check given the bank by McIntyre had not been paid and that the bank looked to *Harter* and *Braun* for payment. The letter also states that the bank had been encouraged to believe that the check would be paid, that three or four dates had been set for its payment, and that the bank had pushed the matter as hard as it could but had been unable to make collection. It appears from the evidence that previous to this time *Harter* and *Braun* had not been informed of the transactions between the banks, that the bank had recovered the note from the possession of McIntyre, and that the check had been returned to the Green Bay bank by the Oconto bank without payment. A number of letters of subsequent dates from the Green Bay bank to *Harter,* giving the facts of the previous transactions and making demand upon *Harter* for the amount of this check, and containing matter relating to another note, and an answer from *Harter,* were received in evidence. E. M. McIntyre & Co. consists of the defendants McIntyre and Case. They were in default. Upon motion the court directed a verdict for the plaintiff. A motion for a new trial was denied. This is an appeal from the judgment in accordance with the verdict.

For the appellants there was a brief by *Doyle & Harter,* and oral argument by *T. L. Doyle.*

For the respondent there was a brief by *Kittell & Burke,* and oral argument by *J. A. Kittell.*

SIEBECKER, J. The court directed a verdict against the
defendants' contention that the $75 and the check of A. L.
Burgan & Co. were in fact received by the plaintiff in pay-
ment of the note. This conclusion of the trial court is sought
to be sustained upon the ground that there is no evidence
which would warrant the jury in finding that the cash and
check were actually accepted by the plaintiff in payment of
the note. It appears without dispute that the check of Bur-
gan & Co., covering the amount due from Burgan & Co. to
*Braun,* was given to McIntyre at *Braun's* request on Jan-
uary 10, 1906; that McIntyre received it and the $75 in
cash; that McIntyre indorsed the check and delivered it and
the cash to the plaintiff bank to apply on the note; that the
authorized officer of the bank received the cash and the check,
stamped the note as paid, and delivered it to McIntyre; and
that McIntyre retained it in his possession until some time in
March. It also appears that the check was postdated twelve
days, and that when, shortly after giving the note to Mc-
Intyre, the bank officer discovered that the check was so post-
dated, he instructed McIntyre to hold the note until the check
was paid. The check was presented to the Oconto bank at
about the time it bore date, and payment was refused be-
cause Burgan & Co. had no funds on deposit to meet the
check; and they had none from the time the check was given
to the time of its return. The plaintiff pressed for its collec-
tion through the Oconto bank and made no effort to collect on
the note from the defendants until the following March,
when it notified *Harter* and *Braun* that the check had not
been paid and that it looked to them for payment of the note.

The question is: Does the evidence present a basis for an
inference by the jury that the cash and the check were in fact
received from McIntyre as payment of the note? If the
plaintiff bank in fact so received the cash and check, then the
defendants *Harter* and *Braun,* who appeal from the judg-
ment, are released from all liability on the note. The facts

and circumstances of the receipt of the cash and the check by the plaintiff bank, coupled with the conduct of its officers, after receipt of the check, in directing the Oconto bank not to protest the check for nonpayment and in allowing it to hold the check and press Burgan & Co. to deposit funds to meet it, and plaintiff's delay until March, when it learned of the failure of Burgan & Co., before notifying *Harter* and *Braun* of the nonpayment of the check and demanding payment of the note from them, would have justified the jury in finding that plaintiff accepted the $75 and the check as payment of the note. Under the circumstances the direction of a verdict to the effect that no evidence of payment had been adduced was erroneous. The state of the evidence calls for submission to the jury of the question whether the plaintiff in fact accepted the cash and check from the defendants as payment of the note. Hence the judgment cannot be sustained.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.

TIMLIN, J., dissents.